UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY SCOCOZZO,

Plaintiff,

v. Case No. 3:26-cv-592-JEP-SJH

THOMAS DYAL, JR., et al.,

Defendants.

---

**ORDER**

This cause is before the Court on the following motions: (1) Defendants' Motion to Dismiss (Doc. 5) and Plaintiff's Response (Doc. 14) thereto; (2) Plaintiff's Motions for Leave to File Supplemental Claims (Docs. 19, 28) and Defendants' Responses (Docs. 22, 29) thereto; (3) Plaintiff's Motion for Leave to Amend the Complaint (Doc. 23), Defendants' Response in Opposition (Doc. 25) thereto, and Plaintiff's unauthorized Reply (Doc. 27); (4) Plaintiff's Motion to File Supplemental Exhibits to Seizure Claims (Doc. 20) and Defendants' Response (Doc. 22) thereto; (5) Plaintiff's Motion to Stay Proceedings (Doc. 7) and supporting Brief (Doc. 8), Defendants' Response (Doc. 11) thereto, and Plaintiff's unauthorized Reply Brief (Doc. 12); (6) Plaintiff's Motion to Stay Supplemental Claims (Doc. 18) and Defendants' Response (Doc. 22) thereto; (7) Plaintiff's Motion to Appoint Counsel (Doc. 15); (8) Plaintiff's Motion to

Supplement Motion for Appointment of Counsel (Doc. 16); (9) Plaintiff's Motion for Extension of Service Time (Doc. 17) and Defendants' Response (Doc. 22) thereto; and (10) Plaintiff's Requests for Issuance of Summonses (Docs. 24, 26).[1]

## I. Plaintiff's Complaint

Plaintiff commenced this action in the Circuit Court of the Eighth Judicial Circuit, in and for Baker County, Florida, under case No. 2025-CA-89,[2] on August 14, 2025, which Defendants timely removed to this Court on March 18, 2026. (*See* Docs. 1, 4). Plaintiff is proceeding on a First Amended Complaint ("**FAC**," Doc. 3)[3] against the following Defendants: (1) Deputy Thomas Dyal, Jr. ("**Dyal**"); (2) Sergeant Tyler Baldwyn ("**Baldwyn**"); (3) Detective Brad Dougherty ("**Dougherty**"); (4) Lieutenant Christopher Walker ("**Walker**"); (5) Detective Rebecca Parker ("**Parker**"), also known as Rebecca Cone; (6) Sheriff Scott Rhoden ("**Rhoden**"); (7) Ron Beck ("**Beck**") with Tri-County Probation; (8) Officer Prescott ("**Prescott**"); (9) Lieutenant David

---

[1] To the extent Defendants have not responded to some of Plaintiff's motions and the time for filing a response has passed, the motions are treated as unopposed. *See* M.D. Fla. R. 3.01(d).

[2] The Court takes judicial notice of Plaintiff's state court dockets. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651–52 (11th Cir. 2020) (holding that a district court may take judicial notice of online state court docket sheets).

[3] The FAC was filed pursuant to the state court's January 14, 2026 order. (*See* Doc. 1-3 at 55).

Mancini, Jr. ("**Mancini**"); (10) Assistant State Attorney Ralph Yazdiya ("**Yazdiya**"); (11) Assistant State Attorney Ryan King ("**King**"); (12) the City of Macclenny; (13) Detective Jeffrey Higginbotham ("**Higginbotham**"); (14) Captain Michael Crews ("**Crews**")[4]; and (15) Sergeant Kirth ("**Kirth**").

Plaintiff alleges he was arrested at his home on February 11, 2022, without a warrant, consent, probable cause, or exigent circumstances; his home was searched and photographed without a warrant or consent; his electronic devices and social media accounts were searched without a valid warrant; and he was accused of being a stalker and a terrorist based on fabricated evidence. (Doc. 3 at 1–2, 5–65).[5] Plaintiff alleges that all of this was "initiated and completed without an investigation and in violation of [his] protected speech." (*Id.* at 2).

---

[4] Plaintiff refers to Crews as "Cruz." (*See* Doc. 3).

[5] Plaintiff was prosecuted in Baker County Circuit Court, case No. 2022-CF-69, for one count of making written threats to kill, do bodily injury, or conduct a mass shooting or an act of terrorism (count I), three counts of aggravated stalking (counts II, III, and IV), and one count of tampering with a witness, victim, or informant (count V). (*See* Doc. 664 in No. 2022-CF-69). After a jury trial, on September 2, 2026, Plaintiff was adjudicated guilty as to counts III and IV, and not guilty as to counts I, II, and V of the sixth amended information. (*See* Docs. 689, 690, 691, 693 in No. 2022-CF-69). The same day, he was sentenced to a 60-month term of imprisonment on count IV, followed by a 60-month term of probation on count III. (*See* Docs. 693, 694 in No. 2022-CF-69). On September 28, 2026, he filed a notice of appeal in the First District Court of Appeal, where his appeal remains pending under case No. 1D2026-2933. (*See* Doc. 708 in No. 2022-CF-69).

In the FAC, Plaintiff brings the following claims: (1) false arrest against Dyal, Baldwyn, Dougherty, Higginbotham, Walker, Cruz, and Parker; (2) unlawful seizure against Parker for photographing his home; (3) First Amendment retaliation against Dyal, Baldwyn, Dougherty, Higginbotham, Walker, Crews, and Parker for arresting Plaintiff, searching his home, seizing his devices, and prosecuting him; (4) excessive force against Dyal, Baldwyn, Dougherty, Higginbotham, Walker, Crews, and Parker for pointing firearms and stun guns at Plaintiff; (5) false arrest and/or cruel and unusual punishment against Beck for placing Plaintiff on house arrest instead of electronic monitoring as ordered by the state court; (6) unlawful seizure against Dyal, Baldwyn, Dougherty, Higginbotham, Walker, Crews, and Parker for seizing Plaintiff's electronic devices without a valid warrant; (7) illegal protective sweep/unlawful search of Plaintiff's home at the time of his arrest against unidentified Defendants, which may include Dyal, Baldwyn, Crews, and/or Walker; (8) failure to train against Dougherty and Mancini for failure to train Higginbotham and Parker on search warrants; (9) failure to train against Baldwyn, Walker, and Cruz for failure to train Dyal on how to obtain an arrest warrant; (10) failure to intervene in Plaintiff's arrest against Baldwyn; (11) failure to intervene in Plaintiff's arrest against Walker; (12) equal protection violation against Dyal and Higginbotham for conflating

Plaintiff's threat statement to stalking the victim; (13) failure to investigate against Dyal, Baldwyn, Dougherty, Higginbotham, Walker, Crews, and Parker prior to arresting Plaintiff and seizing his electronic devices; (14) conspiracy to fabricate evidence against Dyal, Baldwyn, Dougherty, Higginbotham, Walker, Crews, and/or Parker for modifying the evidence; (15) unlawful seizure of Plaintiff's DNA evidence against Kirth or Prescott upon booking; (16) illegal search of Plaintiff's phone on February 15, 2022 against Higginbotham; (17) illegal search of Plaintiff's "Altcoin XP" Instagram account on March 24, 2022 against Higginbotham; (18) malicious prosecution against Dyal for making false statements in his probable cause affidavit; (19) malicious prosecution against Yazdiya for moving to revoke Plaintiff's bond after he posted a YouTube video, titled "Jan please watch this," directed to the victim's mother on April 10, 2022, in violation of the no-contact provision of his pretrial release; (20) First Amendment retaliation, abuse of process, and malicious prosecution against King for filing an amended information after Plaintiff contacted the victim's mother by letter; (21) malicious prosecution against Dyal, Baldwyn, Dougherty, Higginbotham, Walker, Crews, Parker, Yazdiya, and King, in light of the state court's dismissal of the charge for terroristic threat; (22) malicious prosecution against Dyal and other, unidentified officers, in light of the state court's dismissal of the charge for resisting arrest without violence; (23) failure

to train against the City of Macclenny for its failure to train Dyal and Higginbotham on arrest and search warrants; and (24) failure to supervise against the City of Macclenny for its failure to supervise the officers regarding arrest and search warrants. (*See id.* at 1–2, 5–65). As relief, Plaintiff seeks "all forms of damages" totaling $45 million. (*Id.* at 4).

**II. Defendants' Motion to Dismiss**

Defendants Dougherty, Higginbotham, Walker, and Crews[6] move to dismiss the FAC as an impermissible shotgun pleading and for failure to state a claim for relief pursuant to Federal Rules of Civil Procedure 8(a), 10(b), and 12(b)(6). (*See* Doc. 5). Plaintiff argues his FAC is sufficiently pled, but to the extent the Court finds otherwise, he seeks leave to amend to correct the deficiencies. (*See* Doc. 14).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action"

[6] The remaining Defendants have not been served yet.

that amount to "naked assertions" will not do. *Id.* (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted). Although all reasonable inferences should be drawn in plaintiff's favor, *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010), "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal," *Rehberger v. Henry Cnty., Ga.*, 577 F. App'x 937, 938 (11th Cir. 2014) (unpublished but persuasive) (quotations and citation omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680.

Further, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). The purpose of Rule 8 is to "give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555. Also, the allegations in the complaint must be "simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), and the claims must be stated "in numbered paragraphs, each

limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings." *Id.* at 1321. The most common type "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The next most common type is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third type of shotgun pleading does not separate "into a different count each cause of action or claim for relief." *Id.* at 1323. The fourth type is a pleading that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

Plaintiff's sixty-five-page FAC, alleging twenty-four claims against fifteen Defendants, is an impermissible shotgun pleading to the extent it asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* First, Plaintiff does not clearly identify the Defendants against whom he brings Claims 7, 15, and 22. Additionally, to the extent Claims 1, 3–4, 6–9, 12–14, and 21–22 are asserted against multiple Defendants, for the most part, Plaintiff does not identify which Defendants are responsible for which actions or omissions. On top of that, the FAC unnecessarily includes lengthy procedural history, legal analysis, and discovery excerpts, yet fails to include "simple, concise, and direct" allegations to put Defendants on notice of the claims against them. Fed. R. Civ. P. 8(d)(1). These pleading deficiencies frustrate both the Court's ability to determine whether Plaintiff has stated a plausible claim for relief as to any Defendant and Defendants' ability to respond to the FAC. Furthermore, Plaintiff acknowledges that if he is ultimately convicted in the criminal case, which has already happened, dismissal of this action may be required. (*See, e.g.*, Doc. 8 at 2). Therefore, considering the pleading deficiencies in the FAC and Plaintiff's own admission that dismissal of this action may be required,

the Court will dismiss the FAC without prejudice to filing a second amended complaint if Plaintiff believes he can state a viable, plausible claim for relief.[7]

Before filing a second amended complaint, however, Plaintiff should consider the legal standards applicable to his claims. "A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (citing *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007)). An unlawful or false arrest claim "challenges as constitutionally deficient an officer's on-the-spot determination of probable cause." *Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1330 (11th Cir. 2024). In this context, the court "ask[s] whether the totality of the circumstances known to the arresting officer at the time of the seizure provided probable cause to suspect the plaintiff of a crime," and the court "do[es] not consider evidence that the arresting officer may have

[7] In light of this conclusion, Plaintiff's requests to amend his pleading are moot. The Court notes, however, that Plaintiff's ninety-three-page proposed amended complaint (Doc. 23-1), including twenty-eight claims against seventeen Defendants and lengthy arguments, legal memoranda, and procedural history, suffers from the same pleading deficiencies as the FAC. Also, Plaintiff has already been advised that judges and prosecutors are immune from suits for money damages for conduct performed in their judicial and prosecutorial capacities. (*See* Doc. 6 in No. 3:24-cv-1029-MMH-MCR). Likewise, the Florida Attorney General is immune from suit for money damages under the Eleventh Amendment. *See Siskos v. Sec'y, Dep't of Corr.*, 817 F. App'x 760, 766 (11th Cir. 2020) (unpublished but persuasive). As to Plaintiff's proposed unlawful extradition hold claim, which seems to be premised on the assumption that Plaintiff would not be convicted in Florida state court (Doc. 28 at 6), Plaintiff has been advised previously that such challenges should be raised in state court. (*See* Doc. 3 in No. 3:23-cv-1009-TJC-JBT).

harbored ill will toward the plaintiff." *Id.* "[A]ll that matters is whether an objectively reasonable officer could have made the same seizure under the same circumstances." *Id.* "To succeed on a false-arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Brooks v. Miller*, 78 F.4th 1267, 1281 (11th Cir. 2023). "Probable cause exists when 'a reasonable officer could conclude . . . that there [is] a substantial chance of criminal activity." *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022). If an officer had probable cause for an arrest, the arrestee may not later sue the officer under a theory of false arrest. *Brown v. Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) ("[T]he existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest."); *see also Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest.").

The docket in Plaintiff's criminal case shows that he was arrested based on a finding of probable cause. (*See* Docs. 8, 556 in No. 2022-CF-69). In addition, the searches of Plaintiff's electronic devices and social media accounts were authorized by warrants based on probable cause. (*See* Docs. 15–16, 31–34 in 2022-CF-69). Thus, it does not appear that Plaintiff has a plausible claim for false arrest and/or illegal search. Even assuming a plausible claim exists, the Court would likely abstain from interfering in Plaintiff's pending appeal

where he would have an adequate opportunity to attack the validity of his arrest, searches, and resulting convictions. *See Kugler v. Helfant*, 421 U.S. 117, 123–24 (1975); *Johnson v. Florida*, 32 F.4th 1092, 1099 (11th Cir. 2022) ("[A] federal court should not interfere with ongoing state criminal proceedings where the state court conviction and/or sentence is not yet final.") (citing *Younger v. Harris*, 401 U.S. 37, 43–44 (1971)); *Chestnut v. Canady*, 853 F. App'x 580, 583 (11th Cir. 2021) (unpublished but persuasive) ("[I]n the absence of authority to the contrary, a federal court should assume that a state's procedures will afford the plaintiff an adequate remedy.").

Further, prior to his conviction, Plaintiff conceded that at least some of his malicious prosecution claims were premature. (*See* Doc. 14 at 8). Indeed, "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 39 (2022). The docket in Plaintiff's criminal case shows that he was recently

acquitted of some and convicted of some of the charges.[8] Given that Plaintiff is currently appealing his convictions, it appears that his malicious prosecution claims are still premature. *See Brannen v. McGlamery*, No. 6:20-cv-122, 2021 WL 6072558, *3 (S.D. Ga. Dec. 23, 2021) (rejecting plaintiff's argument that his malicious prosecution claim was ripe and finding the favorable-termination requirement was not met where (1) the state court granted plaintiff a new trial, (2) the jury had acquitted plaintiff of one of the charges before his motion for a new trial was granted, and (3) the prosecution was appealing the order granting a new trial). In addition, although Plaintiff was acquitted of some of the charges, a malicious prosecution claim as to those charges is not necessarily ripe because the state court proceedings are still pending. *See id.* at *4 (rejecting "Plaintiff's argument that his malicious prosecution claim is ripe because the jury acquitted him of one of the charges" because "the criminal proceedings against Plaintiff are still pending in state court").

Also, to the extent Plaintiff intends to seek monetary relief for any "harm caused by actions whose unlawfulness would render [his] conviction or

---

[8] As stated earlier, on September 2, 2026, Plaintiff was acquitted of the offenses charged in counts I, II, and V of the sixth amended information, and on December 11, 2025, the state court granted his motion to dismiss with prejudice count IV of the third amended information, which charged Plaintiff with resisting an officer without violence. (*See* Docs. 556, 689–691, 693 in No. 2022-CF-69).

sentence invalid," his claims would be barred by *Heck*, where the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486–87 (emphasis in original; footnote omitted).

If, after reviewing this Order and applicable law, Plaintiff believes he can state a plausible claim for relief, he may file a second amended complaint complying with the following requirements:

1. The pleading must be marked, "Second Amended Complaint."

2. The pleading must name as defendants only those who had been acting under color of state law and are responsible for the alleged constitutional violation.

3. The pleading must legibly state the full names of each defendant (to the extent Plaintiff knows them) in the style of the case on the first page and in section I.B.

4. The pleading must include current addresses for each defendant.

5. In section IV, "Statement of Claim," there must be a clear description of how *each* defendant was involved in the alleged violation(s). Plaintiff should concentrate his efforts on factually describing the actions or inactions of the named defendants which resulted in an alleged violation of his federally protected rights. Vague and conclusory statements are insufficient. Additionally, while background information may be helpful, Plaintiff should focus his factual allegations solely on the actions or inactions of the named Defendants. Diary-like allegations are unhelpful and confuse the issues. The allegations must be stated in numbered paragraphs, each limited to a single set of circumstances.

6. The claims raised in the second amended complaint must be related, meaning the claims must arise from the same basic issue or incident. Any unrelated claims must be raised in a separate lawsuit.

7. In section V, "Injuries," there must be a statement concerning how each defendant's action or omission injured Plaintiff.

8. In section VI, "Relief," there must be a statement of what Plaintiff seeks through this action.

9. In section VII, "Exhaustion," Plaintiff must explain the steps he took to exhaust each claim.

10. The second amended complaint must be complete, including all related claims Plaintiff wishes to raise, and must not refer back to his prior complaint.

Plaintiff must ensure that his handwriting is clear and readable. He must sign and date the second amended complaint after the following statement on the form:

> Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Before signing the second amended complaint, Plaintiff must ensure his assertions are truthful and he has not knowingly made false material declarations. He must neither exaggerate nor distort the facts but instead must truthfully state the facts underlying his claims. Knowingly making a false material declaration in violation of 18 U.S.C. § 1623 is punishable by a fine, imprisonment, or both.

## III. Conclusion

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Motion to Dismiss (Doc. 5) is **GRANTED** only to the extent the First Amended Complaint is **DISMISSED without prejudice**. If Plaintiff intends to proceed with this action, he must file a second amended complaint within **thirty (30) days** of the date of this Order. Failure to comply with this Order by the deadline may result in the dismissal of this action without further notice.

2. Plaintiff's Motions for Leave to File Supplemental Claims (Docs. 19, 28), Motion to File Supplemental Exhibits to Seizure Claims (Doc. 20), and Motion for Leave to Amend the Complaint (Doc. 23) are **DENIED as moot**.

3. Plaintiff's Motion to Stay Proceedings (Doc. 7) and Motion to Stay Supplemental Claims (Doc. 18) are **DENIED as moot**, considering Plaintiff's Notice (Doc. 30), advising the Court that Plaintiff was convicted in the underlying criminal case.

4. Plaintiff's Motion to Appoint Counsel (Doc. 15) and Motion to Supplement Motion for Appointment of Counsel (Doc. 16) are **DENIED**. Plaintiff has not demonstrated exceptional circumstances to warrant appointment of counsel.

5. Plaintiff's Motion for Extension of Service Time (Doc. 17) and Request for Issuance of Summons (Docs. 24, 26) are **DENIED without prejudice** to refiling, if necessary, after Plaintiff amends his pleading.

6. The **Clerk** shall send Plaintiff a blank civil rights complaint form.

**DONE AND ORDERED** in Jacksonville, Florida, on November 13, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Jax-11
c:
Counsel of Record
Anthony Scocozzo, #22000475